# Kerin, Appellant, *v.* Mercantile Trust Company.

*Equity—Contract—Rescission.*

1. Where a person purchases from an assignee of an insolvent, the bonds of a railroad company in the hands of a receiver, the property of which is about to be judicially sold, and the purchaser has full knowledge of the condition of the railroad, and his purpose in acquiring the bonds is to secure control of the railroad, he cannot rescind his contract because he had relied upon the synopsis of a master's report to be filed in the foreclosure proceedings, showing certain liens, and this report, filed after the purchase of the bonds, had, on exceptions, been modified by the court so as to increase the amount of the liens ahead of the bonds.

*Equity—Equity practice—Cross bill—Parties—Act of June 7, 1907, P. L. 440.*

2. New and distinct matters are not within the scope of a cross bill in an equity suit.

3. In a bill in equity for the rescission of a contract, a cross bill for money due on such contract will be sustained though introducing parties other than the plaintiff in the original bill as defendants, where it appears that such other parties are sureties on the bond of the original plaintiff to bind the contract, that they are in fact principals with such plaintiff in the contract, that the parties have seen fit to go into the whole controversy on its merits; that no substantial defense was offered, and that defendants to such cross bill have waived their right to a trial by jury under the Act of June 7, 1907, P. L. 440, and that neither by demurrer or answer do they set up want of jurisdiction in equity.

Argued Nov. 1, 1909. Appeal, No. 120, Oct. T., 1909, by plaintiff, from decree of C. P. No. 1, Allegheny Co., June Term, 1908, No. 455, dismissing bill in equity in suit of Thomas L. Kerin v. the Mercantile Trust Company, Assignee for the benefit of creditors of the Prudential Trust Company. Before FELL, BROWN, MESTREZAT, POTTER and STEWART, JJ. Affirmed.

Bill in equity to rescind a contract, also cross bill for money due.

MILLER, J., specially presiding, filed the following opinion:

The bill is filed for the rescission of a written contract relating to the sale of certain bonds upon the ground of misrepresentation as to the ownership and lien standing thereof, and prays for the return of the purchase money paid on account thereof; the answer denies the material averments of the bill.

The cross bill is filed by the defendant against the plaintiff and his sureties for a money decree, requiring the defendant and his sureties to pay the balance of the contract price for said bonds.

From the pleadings and testimony the following relevant and material facts are found:

The Mercantile Trust Company and the Prudential Trust Company are both corporations created under the laws of the state of Pennsylvania, domiciled in the city of Pittsburg. On June 22, 1904, the Prudential Trust Company made an assignment for the benefit of its creditors to the Mercantile Trust Company.

Among the assets of the Prudential Trust Company coming into the possession of the Mercantile Trust Company, its assignee, were 250 bonds of the par value of $500 each, issued by the Wetzel & Tyler Railway Company, a corporation under the laws of West Virginia, then in the hands of a receiver; said bonds are part of an issue of 600 bonds of like tenor and amount, evidenced by a deed of trust duly executed and recorded. Of this railway company John P. Gangwisch, Jr., one of the defendants in the cross bill, was an incorporator, was

its president from the beginning, and continued in that office at the time and subsequently to the receivership, and was such president (with full knowledge of the affairs of said company at the time the contract hereinafter referred to was made). It was for him and others that the plaintiff, an attorney at law, acted in this transaction.

The said 250 bonds being assets in the hands of the defendant assignee were offered for sale as was its duty; (at the time of the sale referred to in the next finding of fact the assignee had a bona fide offer from other parties of $35,000 cash). The fact of such offer was known to the plaintiff Kerin and to Gangwisch.

The plaintiff, representing himself, Gangwisch and others, entered into negotiations with Stephen Stone, Esq., of counsel for defendant company, for the purchase of said bonds; these negotiations resulted in the written contract. This contract after reciting the foregoing assignment, the amount and the designation of the bonds, the fact that they were assets of the Prudential Trust Company in the hands of the assignee, and that the plaintiff "is desirous of purchasing the said bonds, and succeeding to all the rights which the said Prudential Trust Company has thereunder and thereto," provides for the sale thereof, fixing the consideration at $42,500, of which $2,500 was to be paid in cash; $5,000 in four months, and the balance in two equal installments of $17,500 in twelve and eighteen months respectively, with interest at the rate of six per cent on all deferred payments, said deferred payments to be secured by the bond of the plaintiff with sufficient surety. December 20, 1906, was fixed as the time for closing the sale; the agreement provided that the sale shall be contingent upon ratification by this court; it contained the further provision that the purchaser shall have the right to be substituted as owner of said bonds in lieu of the Prudential Trust Company, in any action then pending concerning the same in the state of West Virginia or elsewhere, with the right in him to continue any action pending or thereafter to be brought in the name of the assignee with the same force and effect.

At and prior to the execution of the foregoing contract

Stone had before him and submitted to Kerin what appeared to be a partial synopsis of the report of a master appointed by the circuit court of Wetzel county, West Virginia, in which the order of lien of said bonds was set forth; according to this synopsis the liens prior to said bonds, seemed to be about $45,000, and the costs of the receivership and litigation then pending concerning said railway were estimated at about $15,000. This report was then still in the hands of the master and was not filed until some time in the next month. There was no representation or guarantee by Stone of the correctness of these estimates. The purchaser was told that he took the bonds as they existed in the assignee's hands, subject to all the rights as well as the charges against the same which the Prudential Trust Company had. It seemed to be assumed by the parties that ownership of the bonds was in the Prudential Trust Company.

Following the execution of the contract the Mercantile Trust Company, assignee, presented its petition to this court setting forth its possession of said bonds, the receivership of the street railway company in the hands of the Guarantee Title & Trust Company of Pittsburg and Martinsville, West Virginia, the poor condition of the road and its failure to earn more than running expenses and proceedings in the circuit court of Wetzel county by creditors and lienors whereby it was proposed to sell the said railway for the benefit of creditors, the value of the railway at about $150,000, the existence of a large amount of outstanding receiver's certificates, the fact of other liens prior to the said bonds with costs and commissions approximating about $60,000, the necessity on the part of the assignee to protect the interests of the creditors in the Prudential Trust Company, of raising a sum approximating $25,000 in order to take care of its interests pending said sale, and the necessity on the part of the assignee to sell said bonds for the highest and best price; accompanying the petition was an executed bond by the plaintiff with the defendant in the cross bills as sureties for the faithful performance of the foregoing contract. Whereupon this court, on December 17, 1906, ratified and approved the contract and authorized the Mercantile Trust Com-

pany, assignee, to sell and-convey to Kerin, the plaintiff, the bonds described in the petition upon receiving the consideration price set forth therein. Following this order the defendant has paid $7,500 on account of said contract price. By agreement between the parties the bonds remained in the custody of the Mercantile Trust Company, assignee, for safe keeping and possibly as further collateral security for the deferred payments subject to the defendant's possession.

The commissioner in West Virginia—a synopsis of whose report was before the parties at the time of the contract on December 17—sent out a general notice informing creditors and parties interested of the completion of his report, with invitations to examine the same and file exceptions thereto. No exceptions seem to have been filed, and on January 17, 1907, his report was filed in said court; this report contained substantially the list of creditors and the order of their liens as had been set forth in the synopsis as shown by Stone to Kerin at the time the contract was made.

The bonds in question were placed, with the knowledge of Gangwisch, president, and other officers of the railway company, with or through Thomas Watkins, president of the Prudential Trust Company, and treasurer of the said railway company, as collateral security for loans, with the right of hypothecation. The purpose of Kerin and Gangwisch in purchasing these bonds was to acquire control of the railway then in the receiver's hands. The status or title to these bonds in the Prudential Trust Company was known to Gangwisch from the testimony taken before a master here in Pittsburg prior to contract upon which this proceeding rests.

Exceptions were filed to this report in the circuit court of West Virginia and hearings had thereon. On February 8, 1908, the said court modified and changed the master's report.

It appears from the findings and decree of said court on the report, that additional mechanics' liens to the extent of about $25,000 were rated in priority ahead of the bonds in question. This is the only substantial change so far as priority of lien is concerned. It further appears that said court found that the bonds in question were not the absolute property of the Pru-

dential Trust Company, but were held as pledges for moneys advanced on account thereof in accordance with an agreement between Thomas Watkins, former president of the Prudential Trust Company, and the said street railway company, they having been placed in his hands for the purpose of raising funds with which to complete and equip said road. The court considered the claims (1) of receiver's certificates the holders of which had paid full value, (2) mechanic's lien claims for which full value had been rendered, and (3) the 600 bonds in question secured by said deed of trust; of these twenty-nine had been disposed of by the company for full value and should so participate—the remaining 571 had been turned over to Watkins to raise money—that he had obtained $166,161 including interest, on account of them; of the amount advanced some $72,000 was by the Prudential, entitling it with the other holders of these bonds in like proportion, each bond to 1–571 of the total fund.

It further appears that the sale of the property rights and franchises of the said railway company was ordered for the payment of the debts ascertained by the court. The said decree also shows that the defendant railway, certain creditors, and the plaintiff, Thomas L. Kerin, moved the court for an order suspending the execution of the said decree for sale for a period of ninety days pending their appeal from the decree to the Supreme Court of Appeals of said state and that such order was made conditioned upon the appellants, or any of them, entering into a bond for the payment of any damages caused by delay. No such bond was given and no appeal was taken; the road was sold, to whom does not appear; nor does it appear that either Gangwisch or Kerin attended said sale or made any effort to acquire control of said railroad, as was their declared purpose in the purchase of said bonds.

On or about March 25, 1908, the plaintiff gave notice of the rescission of the contract for the causes stated in the bill and the return of the moneys paid on account thereof.

After the execution of said contract the defendant assignee took no further interest or action in the proceedings either before the master or the court in West Virginia. Whatever was

done, so far as these bonds were concerned, seems to have been done by the plaintiff through his representatives there.

### CONCLUSIONS OF LAW.

1. There was neither warranty as to title nor as to priority of the lien touching the bonds in controversy at the time the contract was made either in the contract itself or in anything that was said or done at the time; both parties knew, and as lawyers were particularly bound to know, that the synopsis of the master's report or the report itself was subject to exception and modification by the court.

2. While both Stone representing the seller, and Kerin the purchaser, believed from the memoranda of the master's report that the prior liens including costs would approximate $60,000, the fact that the railway was in the hands of a receiver, that proceedings for its sale were instituted, that litigation was pending touching the relative standing of the different class of creditors, that among the claims ahead of the bonds as shown by the synopsis was a mechanics' lien of Tennis & Company of the sum of $14,000, while immediately following were a larger number of other mechanics' claims or liens, all combined was presumptive notice to the purchaser that he took title to these bonds subject to a final adjudication by the court upon the law of conflicting claims then pending or that might thereafter arise; his stipulation to be substituted in any actions pending and to assume all liability for costs in connection therewith is corroborative evidence of the condition which as purchaser he was bound to know these securities were subject to. As purchaser from an assignee of an insolvent he took the title held by the insolvent, unless the assignee warranted a different title.

3. Whatever title the Prudential Trust Company had passed to its assignee. Whether it owned the bonds outright or had only a qualified ownership thereof to the extent of its advancements, is immaterial under the facts in this case, for it only undertook to sell and the purchaser agreed to buy whatever title it had. So far as the sale itself was concerned, even accepting the final adjudication as to ownership as fixed by the

circuit court of West Virginia, the title of the purchaser was good to the extent of $72,000 or $73,000, almost twice the consideration to be paid. No one else had any title to these bonds until these advancements were paid, and therefore for the purposes of the sale and for the purposes of acquiring control of the road the bonds were in the absolute ownership of the purchaser and entitled to as full participation either in the control of the road or participation in dividends or any amounts received from the sale thereof, at least to the extent of the advancements, as if the purchaser had acquired them outright from the railway company and paid for them.

4. Conceding that full faith should be given to the decree of the circuit court of West Virginia, all that was sought to be adjudicated there was the lien standing of the various claims, the difference in the aggregate not being very material, and the priority which these bonds should be entitled to receive, in the distribution of the proceeds of sale as compared with other creditors; conceding that the holders of these bonds did not pay their full face value, it is manifest that for the purpose of securing an equality in distribution between them to the extent of 571 bonds and the other twenty-nine who had paid full face value that an equitable method of distribution was reached by the adjudication in that court; but, this did not pretend to determine any remaining rights either in the railroad company or anyone else in the title or ownership of these bonds; conceding that the 571 bonds were hypothecated as collateral security for moneys obtained therefrom, no one but the holder of the bonds has title or ownership therein for the purposes of this case; the corporation itself has none unless it tendered and paid all advancements; nor is there any claim by anyone else of any interest, immediate or remote, in these bonds.

That adjudication, therefore, is no defense; it did not destroy the right of the plaintiff or his associates as purchasers of these bonds either in obtaining control of the road or for any other purpose.

5. In view of the terms of the contract, of the knowledge of Gangwisch, who is the real purchaser of these bonds back of

Kerin, of the absence of any warranty either as to lien standing or title, coupled with the duty of the assignee to dispose of these bonds for the benefit of the creditors of the Prudential Trust Company, and especially coupled with the fact that from the evidence, there was another bona fide offer in cash ready to be closed on the same day that this contract was signed, coupled with the further fact, that from the date of this contract and the presumptive delivery of the bonds to the plaintiff, the defendant took no further action in the proceedings pending; no sufficient reason has been shown in equity, to rescind the contract, to destroy absolutely the rights of the creditors of the Prudential Trust Company in an asset which at the time of the contract had for them a very material value, nor to compel the assignee by the rescission of the contract to repay the $7,500 distributed among the creditors of the Prudential Trust Company. The plaintiff's bill must be dismissed at his costs.

6. The defendant having filed its cross bill against Kerin and his sureties, and they having answered, not raising the question of jurisdiction, under ordinary circumstances the whole matter in controversy between the parties as raised by the bill and cross bill could be disposed of in this one proceeding.

But the original bill being by one of the parties to the original contract for rescission of the contract concerns itself wholly with the question of the vitality of that contract, while the cross bill is by one of the original contracting parties not only against the original plaintiff but against a number of others, who are not made parties to the original bill. The rule is too well settled to require citation of authorities that new and distinct matters are not within the scope of a cross bill. From the answers filed by the defendants in the cross bill it appears that they ground their defense on the statements in the bond which they signed; they have a right in an action at law to set up such a defense.

The cross bill is therefore dismissed at the costs of the plaintiff therein, without prejudice, however, to proceed in a separate action either on the contract and bond or both, against the plaintiff and his sureties or separately, as it may see fit.

Subsequently MILLER, J., for the court in banc, filed the following opinion:

Upon consideration of this case, after the argument by counsel upon exceptions, we find no reason to interfere with the conclusions reached by the trial judge on the original bill filed, and the exceptions on the part of the plaintiff in the original bill must be dismissed.

As to the exceptions filed by the plaintiff in the cross bill, we find the following additional facts:

The defendants in the cross bill, executed their bond with Thomas L. Kerin as principal, and the rest as sureties, on December 21, 1906, in the penal sum of $45,000, reciting that Kerin entered into an agreement with the Mercantile Trust Company, assignee, to purchase the 250 bonds in question owned by said company; that the said agreement was ratified by this court on December 17, 1906, and bound themselves to the performance of all things contemplated and necessary, as set forth in said article of agreement.

The defendants in the cross bill, viz.: Charles Denney, John P. Gangwisch, Jr., Frank T. Redman and Thomas M. Ward, are not only sureties on Kerin's bond, but are interested with him in the contract providing for the purchase of the bonds which are subjects of the controversy; Kerin having a one-fifth interest in said contract; the others together the remaining interest. The other defendant, Klaus, has not filed an answer.

The foregoing facts aid in leading to a different conclusion; while the cross bill introduced new parties, they are in fact principals, and were purchasers with Kerin; the averments in his bill and his proofs, by which he sought to set aside his contract, are the same in effect as are his, and the other defendants' answers, to the cross bill.

The parties have seen fit to go into the whole controversy on its merits; no defense was offered, other than the naked averments in some of the answers, that the bond was executed "upon the express representations and recital as set forth in said bond itself that the Prudential Trust Co., was the owner of said bonds to be purchased by said Thomas L. Kerin."

Even if these defendants were mere sureties, this allegation, unsupported, is not an available defense under the conclusions heretofore reached; the contract recited in the bond stated that the bonds were among the assets in the hands of the assignee. The ownership by the Prudential Trust Company of the bonds in controversy, whether absolute or qualified, passed title to the bonds under the contract. No other claimant disputes or questions the fact that absolute title vested in the vendee; as parties interested in the contract with Kerin, there is no merit in the technical defense based upon the recital in the bond.

Conceding that new parties are brought in by the cross bill, Equity rule 40 recognizes this right, and the mere fact thereof is not even ground for demurrer; while equity rule 25 provides for the enforcement of a joint and several demand in the nature of a cross bill as between either principals or sureties.

These defendants waived their right to a trial by jury under the Act of June 7, 1907, P. L. 440. Neither by demurrer or answer do they set up want of jurisdiction in equity. The whole controversy is submitted in this one proceeding; while consent will not hold jurisdiction, Pittsburg & Allegheny Drove Yard Co.'s App., 123 Pa. 250, yet as the contract, the surety bond, and all the parties are before the court, under the cross bill filed by the defendant to obtain relief for itself in reference to the matter contained in the original bill, Datz v. Phillips, 137 Pa. 203, and as a multiplication of suits will be avoided, Johnson v. Price, 172 Pa. 427, it appears that this joint proceeding will reach all phases of the dispute most effectively, and is ground to sustain the same: Electric Company's App., 114 Pa. 574.

Therefore, a decree will be entered against the several defendants in the cross bill, excepting Klaus, in the penal sum of their bond, conditioned to be released upon the payment of the balance due upon the contract, with interest thereon; as to Klaus, he having failed to answer, the regular proceeding to obtain judgment pro confesso may be followed, then a like decree should be entered against him.

*Error assigned* was decree dismissing the bill.

*Thomas Watson*, with him *George R. Wallace*, for appellant.

*W. A. Stone*, of *Stone & Stone*, for appellee.

PER CURIAM, January 3, 1910:

The decree dismissing the plaintiff's bill and sustaining the cross bill of the defendant is affirmed on the findings of fact and law and the opinion of Judge MILLER, specially presiding.